Good morning. What brings us here today is a determination of when a case should be taken away from the immigration judge. What happened here was the Department of Homeland Security lost the immigration court hearing wherein the immigration judge determined that a case should be taken away from the immigration judge. DHS had not established that Mr. Menjivar was or was in that zone of persecutor Barr wherein he would have been someone who may have incited or participated in persecution. Counsel, help me. It's possible I misunderstood, but I thought that what happened here was that the IJ declined to make a credibility determination. He looked at what was alleged by the government. The regulation of course refers to May, but he said because your client declined to explain the circumstances that he wasn't going to make a finding. Isn't that correct? Not quite. Okay, what's there? Let's assume arguendo that that's correct. What I'm wrestling with is what did the BIA do here? Did it make an adverse credibility determination in the first instance, or did it simply rule on whether the IJ had made an inaccurate and erroneous finding in determining that your client was credible? Which was it? Look, the BIA did make a determination de novo, which would be in the first instance from their point of view. Well, I thought you just said, perhaps I misunderstood, that the IJ made a determination in favor of your client. She did. So she made a determination and she made it in the first instance, and the BIA simply passed upon whether that was correct, right? That's correct, Your Honor. Okay, so we really don't have a situation here then where the BIA is acting in the first instance, right? That's correct. Okay. Now, the BIA determined that the IJ was incorrect in making a determination that Petitioner was not incredible. And on that basis, the BIA went forward to determine that he did, in fact, fail to meet his bar or his burden of proof in determining whether or not he had defeated the persecutor bar. In effect, the BIA determined that those three interviews with Department of Homeland Security trumped anything that the immigration judge could have come up with, which was actually... That's what the BIA did? Yes, the BIA is basically saying that DHS met its burden of showing that Petitioner had failed to overcome the persecutor bar. Our position is he didn't have to because the DHS never, ever showed that he was in that zone of possible persecutor based on our law. I struggle with that. The regulation indicates that if the evidence indicated that he may have been involved in persecution, then the burden shifts to him. And as I understand it, the Nicara interviews dealt with issues such as the length of service in the Batallon Casadores, whether he was trained to use mortars, whether the guerrillas killed... Whether he killed guerrillas in combat, whether he arrested guerrillas and turned them over to interrogators, and whether he only performed checkpoints for drunk drivers and so on. Isn't that enough to indicate that he may have been involved? Well, if that were the case, Your Honor, that would mean everyone in the Army would have been a potential persecutor. The fact is... He was in the Batallon Casadores, and as you probably know, Casadores means hunters. So these are people that go out and look for specific people, in this case to turn them over to an interrogating division. Absolutely. That's not everybody in the Army, is it? Well, no, that's not everyone in the Army, but there was a certain unit called the S-2 unit that has been attributed for persecution. Petitioner, at any stage of these proceedings, has never ever said that he was a member of S-2, or that he had any idea of what happened after he turned over armed guerrillas to the duly constituted authorities in his unit. The way I read this, it was almost like Casablanca, where the lieutenant was shocked, shocked that there was alcohol being used. I mean, you know, he's in a unit that does these kinds of things, and you're suggesting that he had no idea. Exactly, and the support for that is Petitioner had three interviews with the Department of Homeland Security asylum officer, and at no time during those interviews did he ever say anything that would put him in that zone of persecutor. It was simply inconsistencies between a seven-year gap in time between those interviews with DHS and the ultimate immigration court hearing. So at no time did Petitioner say, I knew, I had any idea, I had no access to that type of thing, I never saw any harm. So from your perspective, given your viewpoint, what should the result of this hearing be? What relief are you seeking? We're seeking to reinstate the immigration judge's favorable decision, and we're relying on the BIA dissent. This wasn't a unanimous BIA decision. One of the panel members agreed with us that even if we look at DHS's evidence, testimony, it still doesn't rise to the level. So what you're asking us to do is to, in effect, reinstate the IJ's, in your view, credibility determination, right? That's correct. Well, the credibility defining and the fact that there was a grant of the relief based on the fact that Department of Homeland Security failed to meet its initial burden. Had they met their initial burden, then Petitioner would have to then say, this is why I should not be considered a persecutor. He never got that opportunity. You want to save any of your time, it's entirely up to you. I do. Do you want to rebut? Okay, thank you. Thank you. So we'll hear from the government. Good morning. Good morning, Your Honors. May it please the Court, Stephanie Hennis for Respondent. In this case, the Board properly concluded that DHS did, in fact, meet its initial burden here, which was a very minimal threshold burden. Let me just ask you this. Somewhat to my surprise, your opponent suggests that the IJ made a credibility determination. Is that also the position of the government? Yes, that is the position of the government. It is. So both sides think that the IJ made a credibility determination. So we're not dealing then from either of your perspectives with the situation where the BIA made a credibility determination in the first instance. No, Your Honor. In the Board's decision, it reflected that it was reviewing the immigration judge's adverse credibility determination, or it was reviewing the positive credibility determination. And when it conducted that clear error review, it concluded that there was, in fact, clear error in that determination. Counsel, where in the record was that credibility determination made? Let me see here. I know that the immigration judge, the immigration judge accepted. I'm sorry, Your Honor. I'm not sure exactly where in the immigration judge's decision. You're being recorded for posterity. They want to be able to hear your voice. I'm sorry, Your Honors. The immigration judge in his decision, in her decision, did say that she was accepting the testimony that the petitioner had provided. And in doing so, was making the determination that the person was credible. For example, the immigration judge on, let's see, on page 14 points to the fact that as opposing counsel pointed out, the respondent testified that he had no personal knowledge of what occurred during the questioning of the captured military combatants. In this case, the immigration judge was accepting what the petitioner had provided in his testimony, which means that she was accepting that as credible. So in this case, my understanding is that the IJ gave, I mean, when the government presented its version, and I cited some of the things that the government provided, the IJ said basically, do you have any response? And he didn't make a response. And the determination, whatever it was, was made with the recognition, I think she said, that he didn't have an adequate chance to respond. Do you remember that in the record? I do recall the immigration judge saying that he didn't have an adequate opportunity to respond. Does it make any difference? Well, he did have an adequate opportunity to respond, which is something that the board pointed out in its decision and that we pointed out in our brief. The immigration judge actually called the parties back into court after taking all of the testimony as to the facts of the case and said she realized that there wasn't an opportunity to address those inconsistencies. And the petitioner declined to provide any testimony to try and reconcile those. So from the government's perspective, the fact that the petitioner failed to respond to deal with any inconsistencies, the IJ just reads into that whatever she wishes vis-a-vis credibility. Is that correct? In other words, if he doesn't explain it, then maybe it goes against him. Is that right? It could have gone against him, but the immigration judge in this case did not hold it against him. I understand that, but she could have if she wished. She could have, yes. And that's the reason why the board in this case reviewed for clear error. The immigration judge does get to make the initial finding as to the credibility of the applicant's testimony. The board then reviews that for clear error. And I don't think there's any question that there was clear error in the immigration judge's decision here. As the petitioner told two completely competing stories as to his involvement with the military during the war in El Salvador, specifically aimed to minimize his involvement with the activity that the asylum officer had concluded, showed that he had been involved in the assistance of persecution. Now, I'd like to discuss the petitioner's argument that he never came out and said that he knew that there was any persecution taking place. Well, pursuant to board precedent, the board is allowed to rely on both direct and circumstantial evidence of knowledge in this case. And there are several aspects of this case that are circumstantial evidence of knowledge. One of those is that the petitioner was involved in a battalion that is known for engaging in human rights abuses. There's also evidence in the record showing that even in the early 80s, it was pretty widely known that the S2, the group of interrogators that he was passing the guerrillas on to, both tortured and killed the people that were being interrogated. And if the board takes that direct, indirect evidence, circumstantial evidence and concludes that there may have been knowledge, then the burden passes to the petitioner, right? Yes, Your Honor. In this case, I gather the government's position is that having so passed that the petitioner had that burden and did not meet it. Yes, Your Honor. And that is what the board said in this decision. There isn't any evidence that he didn't know apart from his testimony that he didn't know. And that was found to be not credible. I also point to the fact that when he spoke with the asylum interviewer, he admitted that he and some of the other people in his battalion discussed what might be happening to the people that were being turned over to the S2, but then said that they had no control over what was happening. So there wasn't anything that they could do about it. And then another thing that is circumstantial evidence in this case is that the petitioner did decline to provide any testimony to try and reconcile his two accounts of what his involvement in this was. So that is some evidence that is indicative of the fact that the petitioner was trying to hide what his true involvement was and what his knowledge was of what the S2 engaged in. The petitioner also provided some explanation as to where the actual S2 interrogations were occurring at headquarters. It's not as though he had no knowledge of where these things were taking place. And additionally, he said that none of the people who weren't part of the S2 were allowed there, which also points to some evidence that a person in the middle of a war would become suspicious of what exactly was going on there. I will also point to a Fourth Circuit case that's cited in our brief. It's Quintanilla v. Holder. And the facts of that case are very similar to the facts here. And it's a case arising out of... The name of the case again, please. Quintanilla. It's cited on page 27 of the respondent's brief. I can get you the... That's right. Okay. And in that case, it involved an individual in the Salvadoran military. He captured guerrillas and turned them over for interrogations with these special interrogators. He claimed he didn't know what was going on. But looking to the other evidence, circumstantial evidence that was presented in the case, the court agreed that there was sufficient evidence there to show that he may have been involved in the assistance of persecution. I would just conclude by saying that the initial burden is really a very minimal threshold burden, showing some evidence to support an inference, as this court said in Miranda-Alvarado, that the person may have engaged in persecution. And the board correctly concluded that that burden was met here, and the petitioner did not successfully rebut it. Do either of my colleagues have more questions? Yeah. Okay. Thank you, Your Honor. Counsel, you have some rebuttal time. Thank you. Just to set the record straight regarding the underlining procedural history, after the initial merits hearing, the government, DHS, asked to call one other witness. That would have been the DHS officer, who testified that on three occasions he had met with petitioner. The judge decided, okay, I'm going to reset this so that both sides can come back and have cross-examination of the petitioner in response to the DHS officer's testimony. On that date, at CAR 260-61, both sides, both the DHS and petitioner's side, had no further questions. After the man had come back and testified? That's correct, Your Honor. After DHS had testified, the judge says, okay, we've now heard from DHS. I'm going to reset this so that there can be further cross-examination of the petitioner based on this new information that is indeed inconsistent with his court testimony. So on that date, both sides, both DHS, who had the burden of establishing the may have committed persecution, failed to come forward. Well, I guess, at least from my perspective, one thing I do agree with the government on is that the government has a very low bar to meet here, that he may have something. And I don't know if there are any magic words that have to be said that, hey, this bar has been met. But the IJ gave your client an opportunity to comment, to explain. He failed to do that. The IJ gave petitioner an opportunity to rebut any determination that the government had met its bar. The IJ determined the government had not met their bar. And I get that. So when petitioner said, I don't have to testify at this point, DHS had the opportunity to call him on recross and to elicit additional information that would have perhaps resolved any consistency. That didn't happen. So the IJ decided, okay, DHS has not met its bar. Let me ask my colleagues, do either have any questions? All right, thanks to both parties. We appreciate the argument. The case just argued is submitted.
judges: Fernandez, M. Smith, Otake